IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Michael O. ERSPAMER, Attorney at Law:

LAWYER REGULATION SYSTEM OF THE STATE OF
WISCONSIN By Deborah M. Smith and Bruce J.
Rosen, Special Investigators, Complainant,

v.

Michael O. ERSPAMER, Respondent.

Supreme Court

*No. 2010AP0112–D.—Decided August 26, 2011.*

2011 WI 85

(Also reported in 801 N.W.2d 760.)

1

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶ 1. PER CURIAM.   In this matter we review the report and recommendation of Referee Timothy L. Vocke that the license of Attorney Michael O. Erspamer to practice law in Wisconsin be suspended for a period of 60 days due to his professional misconduct, that certain conditions be imposed on the reinstatement of Attorney Erspamer's license, and that he be required to pay the full costs of this disciplinary proceeding. We also consider the post-report request of one of the special investigators to dismiss three of the disciplinary counts against Attorney Erspamer.

¶ 2.   After fully considering this matter, we conclude that Attorney Erspamer's license to practice law in Wisconsin should be suspended for a period of 60 days.[1] We agree with the referee that conditions should be placed upon the reinstatement of Attorney Erspamer's license, although the conditions we impose differ to some degree from those recommended by the referee. Finally, we determine that Attorney Erspamer should be required to pay the full costs of this proceeding, which were $4,768.34 as of August 9, 2010.

¶ 3.   Because of the unique factual circumstances of this matter and the court's need to obtain additional information in order to ensure the protection of the public and fairness to Attorney Erspamer, the procedural history of this proceeding is rather lengthy.

---

[1] We note that, as of the date of this opinion, Attorney Erspamer's license is already administratively suspended due to his failure to comply with mandatory continuing legal education (CLE) reporting requirements and his failure to pay bar dues and assessments.

3

¶ 4. On January 14, 2010, the Lawyer Regulation System (LRS)[2] filed a formal complaint against Attorney Erspamer in this court. The original complaint alleged two counts of professional misconduct relating to Attorney Erspamer's representation of client D.N.[3] The LRS requested that the Barron County sheriff's department serve the complaint and order to answer on Attorney Erspamer. The sheriff's department subsequently submitted a Return of Non-service, indicating that it had been unable to accomplish personal service on Attorney Erspamer and containing the following notation: "HOUSE IS BARRICADED – NO CONTACT." Since personal service could not be accomplished, counsel for the LRS served the original complaint and order to answer on Attorney Erspamer by certified mail, although Attorney Erspamer did not claim the certified envelope. *See* SCR 22.13(1).

---

[2] The complainant in this proceeding is the Lawyer Regulation System, rather than the Office of Lawyer Regulation (OLR), because Attorney Erspamer was a member of a district committee, which assists the director of the OLR in investigating allegations of misconduct and in other assigned tasks. *See* SCR 22.25 (allegations of misconduct against a member of a district committee are assigned to a special investigator, whose investigative report may be reviewed by the special preliminary review panel; formal complaints are filed by the special investigator either personally or through counsel on behalf of the LRS). The LRS and the two special investigators who have acted on its behalf in the matters addressed in this opinion have been represented by a single counsel in this formal disciplinary proceeding. *See* SCR 22.25(7) (a special investigator may prosecute a complaint personally or may assign that responsibility to counsel retained by the director of the OLR).

[3] Attorney Deborah M. Smith acted as the special investigator who investigated the grievance regarding the representation of D.N. and acted on behalf of the LRS in directing the filing and prosecution of the complaint regarding the D.N. representation.

¶ 5. The LRS filed an amended complaint and order to answer in February 2010. It again attempted to have the Barron County sheriff's department personally serve authenticated copies of those documents on Attorney Erspamer. The sheriff's department once more sent back a Return of Non-service, this time with the following notation: "Unable to serve the following papers because: BUSINESS NEW OCCUPANTS; RESIDENCE BARRACDED (sic)." The LRS again used the certified mail route to accomplish service. Although the United States Postal Service left notices for Attorney Erspamer regarding the certified envelope on two occasions, he did not claim the envelope.

¶ 6. After the time for answering the amended complaint had passed, the LRS filed a motion for the entry of a default. Both the referee and counsel for the LRS tried on multiple occasions to communicate with Attorney Erspamer regarding the disciplinary proceeding, but did not receive a response.

¶ 7. On May 10, 2010, the LRS filed a second amended complaint and order to answer. This version added three counts of professional misconduct related to Attorney Erspamer's representation of client R.H.[4] The Barron County sheriff's department again was unable to serve the second amended complaint and order to answer on Attorney Erspamer. Its Return of

---

[4] Special Investigator Bruce Rosen investigated the grievance regarding the representation of R.H. and acted on behalf of the LRS in directing the filing and prosecution of the complaint regarding the R.H. representation. Thus, because there had been two separate representations and two grievances, there are two special investigators listed in the caption of this proceeding as acting on behalf of the LRS. For the sake of brevity in this opinion, the special investigators will be referenced as Investigator Smith and Investigator Rosen.

Non-service this time contained the following notation: "HOUSE IS BARRICADED – NO ONE THERE?"

¶ 8. After sending multiple e-mail messages and mailing a written notice to Attorney Erspamer, the referee held a telephonic scheduling conference on May 14, 2010. Attorney Erspamer did not participate. The referee's scheduling order gave Attorney Erspamer until June 7, 2010, to file and serve a responsive pleading to the second amended complaint. When Attorney Erspamer did not respond by the deadline, the LRS filed and served a renewed default motion.

¶ 9. Pursuant to an order of the referee, the LRS filed a sanction brief outlining the discipline it believed appropriate. Its brief stated that its main goal in the proceeding was not to punish Attorney Erspamer, but to protect the public from an attorney who was not functioning properly. It said that "[i]f this was a situation where the lawyer was cooperative and responsive, [the LRS] would be recommending a reprimand, but Mr. Erspamer's refusal to cooperate and respond leads [the LRS] to believe a reprimand would not adequately protect the public." Based on the belief that conditions could not be placed upon a suspension of less than six months, the LRS recommended a six-month suspension of Attorney Erspamer's license to practice law in Wisconsin.

¶ 10. The referee held a hearing on the default motion on June 30, 2010. Attorney Erspamer did not communicate with the referee or counsel for the LRS prior to the hearing nor did he appear at the hearing. The referee ultimately granted a default to the LRS.

¶ 11. Because of the nature of the allegations in the LRS's complaint and an apparent concern for Attorney Erspamer's welfare, the referee took the unusual

6

step of having Investigator Rosen testify at the default hearing regarding his attempts to communicate with Attorney Erspamer and the results of his investigation. Investigator Rosen testified that as a result of his inquiries he became concerned that Attorney Erspamer may have been experiencing some mental health problems. He noted that he had learned that Attorney Erspamer had apparently cut off communication with his family. When that fact was combined with the facts that Attorney Erspamer, a respected and successful attorney, had abruptly disconnected his office telephone, had closed his law office, had stopped communicating with clients, had refused to communicate with Investigator Rosen orally, had spoken to the other special investigator only because he had been compelled to do so, and had virtually barricaded himself in his house so that the sheriff's department could not even serve him with process, Investigator Rosen concluded that there were sufficient reasons to believe that Attorney Erspamer was experiencing problems.

¶ 12.  In his subsequent report, the referee made findings of fact and conclusions of law based on the allegations of the second amended complaint. He also noted mitigating and aggravating facts based on those allegations and the testimony of Investigator Rosen, which the referee appears to have credited in full. The factual summary that follows is based upon those findings of fact.

¶ 13.  The first two counts of the second amended complaint related to Attorney Erspamer's representation of D.N. on a worker's compensation claim. The retainer agreement for this representation provided that Attorney Erspamer would receive 20 percent of any settlement amount plus reimbursement of his expense disbursements for the case.

¶ 14. D.N.'s claim was settled and a compromise agreement was executed in February 2007. The administrative law judge (ALJ) approved the compromise agreement and included the initial payout provisions of the agreement into the final order in the worker's compensation proceeding. Under the terms of the compromise agreement, Attorney Erspamer received a fee of $8,500, plus reimbursement for his expenses in an amount slightly over $1,000.

¶ 15. The compromise agreement also required the respondent in the worker's compensation proceeding, who was represented by Attorney Richard Duplessie, to establish and fund an appropriate Medicare Set Aside Agreement (MSA) that would cover D.N.'s anticipated future medical expenses that were alleged to have resulted from her work-related injuries. Between March 2007 and June 2008 Attorney Erspamer and Attorney Duplessie attempted to negotiate the detailed terms of the MSA. As part of this process, a firm was selected to perform an analysis of D.N.'s future medical expenses. Attorney Erspamer obtained D.N.'s signature on medical release forms and forwarded them to the firm conducting the analysis. When the analysis was completed, Attorney Erspamer forwarded a copy of the firm's report to D.N. Attorney Erspamer also exchanged correspondence with Attorney Duplessie regarding the language to be included in the MSA. During this period of slightly more than a year, Attorney Erspamer sent copies of his correspondence with Attorney Duplessie to D.N.

¶ 16. In March 2008 Attorney Duplessie wrote a letter to Attorney Erspamer and sent a copy of it directly to D.N. In June 2008 Attorney Erspamer sent a response asking Attorney Duplessie to refrain from having direct contact with his client and inquiring

8

about the status of some changes to the draft language of the MSA. Attorney Erspamer sent a copy of this letter to D.N.

¶ 17. On June 24 and July 10, 2008, Attorney Duplessie sent additional letters to Attorney Erspamer regarding the language of the MSA and the need for updated medical releases. Attorney Erspamer did not respond to the letters.

¶ 18. On July 14, 2008, D.N. wrote a letter to Attorney Erspamer asking about the status of her case. Attorney Erspamer did not respond to this communication from his client.

¶ 19. On August 18, 2008, Attorney Duplessie wrote a letter to Attorney Erspamer requesting that he obtain D.N.'s signature on new release forms. D.N. obtained a copy of this letter. She forwarded a copy of the letter to Attorney Erspamer with a note asking for his advice regarding what she should do. Attorney Erspamer again did not respond.

¶ 20. In September and October 2008 Attorney Duplessie wrote additional letters to Attorney Erspamer. Those letters inquired whether Attorney Erspamer was still representing D.N. They also asked about the status of the MSA and of the updated release forms. Attorney Erspamer still did not respond.

¶ 21. Throughout the fall of 2008, D.N. made repeated attempts to contact Attorney Erspamer by either stopping at his law office or making telephone calls. She never received any response. Finally, on January 30, 2009, D.N. was able to reach Attorney Erspamer on his home telephone. He told her during that telephone call that he was sending a letter to Attorney Duplessie in order to finish the MSA.

¶ 22. Attorney Erspamer, however, did not send any letter to Attorney Duplessie until April 22, 2009. In

that letter, Attorney Erspamer requested a copy of the MSA documents. Thus, with the exception of the January 30, 2009, telephone call with D.N., Attorney Erspamer did not have any contact with his client or with opposing counsel for approximately ten months.

¶ 23. On May 5, 2009, Attorney Erspamer sent a letter to D.N. In the letter he stated that he had not received a response from Attorney Duplessie to his April 22, 2009, letter. Attorney Erspamer advised D.N. that if she wished to pursue the completion of the MSA, she should retain a different attorney due to the fact that she had filed a grievance against him.

¶ 24. D.N. believed that the fee received by Attorney Erspamer required him to complete the MSA on her behalf. Attorney Erspamer told the special investigator that he considered his work to have been completed when the compromise agreement was executed and approved in early 2007. He acknowledged, however, that he had continued for some time after the completion of the compromise agreement to communicate with both Attorney Duplessie and D.N. about the MSA because he felt he had a duty to do so. He also acknowledged that in other worker's compensation cases, he had pursued a new claim or a claim of bad faith on a client's behalf when a MSA was not completed. Attorney Erspamer did not discuss any such option with D.N.

¶ 25. In his communications with the special investigator, Attorney Erspamer admitted that shortly after June 2008 his office telephone had been disconnected and thereafter he had simply closed his law office. He never informed D.N. of these facts nor did he inform her how she could reach him after those events.

¶ 26. On the basis of these findings of fact, the referee concluded that the LRS had proven two counts

of professional misconduct related to Attorney Erspamer's representation of D.N. First, by failing to provide timely representation to complete the MSA, Attorney Erspamer had failed to act with reasonable diligence and promptness, in violation of SCR 20:1.3.[5] Second, Attorney Erspamer had violated SCR 20:1.4[6] by failing to keep his client reasonably informed about the status of her legal matter.

¶ 27. The final three counts of the second amended complaint related to Attorney Erspamer's representation of R.H. and the investigation of R.H.'s grievance.

¶ 28. R.H. entered into a written retainer agreement with Attorney Erspamer in October 2007 to pursue an appeal of a denial of social security benefits. R.H. met with Attorney Erspamer on only two occa-

---

[5] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[6] SCR 20:1.4 provides as follows:

(a) A lawyer shall:

(1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in SCR 20:1.0(f), is required by these rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests by the client for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

11

sions. He attempted to telephone Attorney Erspamer's law office on multiple occasions, but never was able to reach Attorney Erspamer. He subsequently learned that the telephone number for the law office had been disconnected. R.H. also tried repeatedly to reach Attorney Erspamer at his home telephone number, but no one ever answered the telephone.

¶ 29. R.H. filed a grievance against Attorney Erspamer in April 2009. At that point he had not heard from Attorney Erspamer for approximately one year. After learning that R.H. had filed a grievance and was seeking the return of his file and records, Attorney Erspamer did return the file to R.H.

¶ 30. According to R.H., his review of the records indicated that Attorney Erspamer had not done any significant work on the matter. R.H. was able to retain new counsel to pursue the appeal.

¶ 31. In September 2009 Investigator Rosen wrote a letter asking Attorney Erspamer to contact him at his office so that they could discuss the R.H. grievance. Instead of a telephone call, Investigator Rosen received a letter from Attorney Erspamer that stated Attorney Erspamer wished to communicate by letter. Attorney Erspamer further stated that he had never received a request from R.H. for the return of his file until the grievance had been submitted.

¶ 32. Because of information he learned during the investigation, Investigator Rosen became concerned with Attorney Erspamer's mental health and determined that it was necessary for him to communicate with him orally to assess the situation. He responded to Attorney Erspamer's letter with his own letter informing Attorney Erspamer that it was imperative that Attorney Erspamer contact him so that they could discuss the R.H. matter. After receiving no response,

Investigator Rosen sent another letter on October 30, 2009. This letter expressly directed Attorney Erspamer to contact Investigator Rosen by telephone on a particular date and time. The letter advised Attorney Erspamer that he could place the call collect.

¶ 33. Attorney Erspamer did not telephone Investigator Rosen. On the date of the scheduled telephone conference, Investigator Rosen received a letter from Attorney Erspamer indicating that he would be happy to answer all of Investigator Rosen's questions in writing.

¶ 34. Investigator Rosen then sent another letter in reply declining to conduct their interview in writing. He again directed Attorney Erspamer to telephone him collect on a specified date and time. Investigator Rosen advised Attorney Erspamer that if he was unable or unwilling to speak on the telephone about the R.H. matter, Attorney Erspamer was required to submit one week prior to the scheduled telephone conference any and all information that provided a basis for his inability to discuss the matter orally.

¶ 35. On the date of the second scheduled telephone conference, Investigator Rosen received another letter from Attorney Erspamer. The letter stated that Attorney Erspamer would communicate with Investigator Rosen only by letter. It failed to provide any information that would provide a basis as to why Attorney Erspamer was unable to discuss the matter orally.

¶ 36. The referee concluded that these facts regarding the R.H. matter and the ensuing investigation demonstrated that Attorney Erspamer had engaged in three counts of professional misconduct. First, by failing to provide timely representation to R.H., Attorney Erspamer had violated SCR 20:1.3. Second, Attorney Erspamer's failure to communicate with his client for

13

nearly a year regarding his legal matter constituted a violation of SCR 20:1.4. Finally, the referee concluded that Attorney Erspamer had violated SCR 21.15(4)[7] by repeatedly refusing to speak with Investigator Rosen on the telephone as directed.

¶ 37. The referee began his discussion of an appropriate resolution by noting a number of mitigating and aggravating factors. On the mitigation side of the ledger, the referee pointed to the fact that Attorney Erspamer had been in private practice for approximately 26 years with no prior disciplinary history and a reputation of being well respected, as shown by his appointment to the district committee. He also noted that the facts of the two representations did not involve moral turpitude, dishonesty, or a violation of the attorney's oath.

¶ 38. The referee stated that aggravating factors included Attorney Erspamer's abrupt closing of his law practice without giving notice to his clients or providing them with a means to contact him telephonically. He further stated Attorney Erspamer appeared to have essentially abandoned work in progress for current clients. Moreover, he failed to cooperate with the special investigators as requested.

¶ 39. For all of the reasons cited by Investigator Rosen in his testimony at the default hearing, the referee agreed with him that it appeared that there were mental health issues involved in this situation.

---

[7] SCR 21.15(4) states:

Every attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys.

¶ 40. The referee ultimately recommended that Attorney Erspamer's license to practice law in Wisconsin be suspended for a period of 60 days and that he be required to pay the costs of this proceeding. He also recommended that a number of conditions be imposed on the reinstatement of Attorney Erspamer's license and his practice of law after reinstatement. The referee recommended that in order for Attorney Erspamer to have his license reinstated, he should be obligated to (1) provide the OLR with the name, address, and telephone number of a psychiatrist who had already agreed to meet with him and evaluate him; (2) execute a release waiving his patient/doctor privilege; (3) provide the OLR with the psychiatrist's initial evaluation report, which would include a diagnosis, a prognosis, and a treatment protocol; (4) commence the treatment plan with the psychiatrist; and (5) achieve stabilization, as indicated by the psychiatrist stating that Attorney Erspamer does not pose a danger to himself or to the public and that he can function as an attorney, or be discharged from treatment after having successfully completed it. In addition, the referee recommended that, even if reinstatement occurs, Attorney Erspamer should be required to continue in treatment until discharged by the psychiatrist and to provide the OLR with each and every treatment note and the treatment discharge summary as they are prepared.

¶ 41. In light of the concerns raised by Investigator Rosen's testimony and the referee's report, as well as the lack of any explanation in the record as to why Attorney Erspamer had abruptly closed his office, had apparently withdrawn from contact with his family and others, and had refused to have any oral communication with Investigator Rosen, on January 12, 2011, we issued an order directing Attorney Erspamer to show

15

cause why his license should not be temporarily suspended for willful failure to cooperate with a disciplinary investigation. The order also directed Investigator Rosen to make additional attempts to contact Attorney Erspamer and others for the purpose of determining the reasons for his conduct. Investigator Rosen was required to file a written report regarding the results of his efforts.

¶ 42. Attorney Erspamer did file a response to the January 12, 2011, order. His response asserted that since the date of the order he had spoken twice with Investigator Rosen over the telephone. He contended that he had answered every question posed by the special investigator and had provided all of the requested documentation. He disputed that he had ever failed to cooperate with the investigation, stating that he had indicated to Investigator Rosen his willingness to answer any question in writing. He stated he had requested written communications in order to avoid confusion and to create a record of the contents of the communications.

¶ 43. Investigator Rosen submitted his supplemental report on March 9, 2011. He reported that he had spoken with Attorney Erspamer by telephone on two occasions at the end of January 2011. Attorney Erspamer asserted in those conversations that because of financial hardship his office telephone service had been disconnected in late 2008 and that he had moved out of his law office in 2009 because the building, which he owned, was in foreclosure. With respect to the reason why Attorney Erspamer had refused to communicate orally with Investigator Rosen during the initial investigation of the R.H. grievance, Attorney Erspamer stated that he did not believe he was obligated to do so.

He said that prior investigations had been done by letter and he could not understand why this one would be different.

¶ 44. Investigator Rosen's supplemental report also addressed Attorney Erspamer's statements regarding the R.H. representation. Attorney Erspamer told Investigator Rosen that the Social Security Administration (SSA) had always sent him a list of pending cases that he was handling and that the R.H. appeal had inadvertently been omitted from that list. Investigator Rosen reported that the documents corroborated this assertion. Because the R.H. appeal was not on the list provided by the SSA, Attorney Erspamer said that he had inadvertently neglected to tend to the closing of that matter before he closed his law office. Attorney Erspamer asserted that he first learned that R.H. wanted his file returned on May 5, 2009, and that he immediately sent the file to R.H. that same day. Attorney Erspamer also said that he had signed a letter waiving any fee to which he might be entitled in the matter.

¶ 45. With respect to Attorney Erspamer's ability to function as an attorney, Investigator Rosen reported that in the two telephone conversations Attorney Erspamer had been coherent in his answers to Investigator Rosen's questions and had demonstrated a remarkable recollection of the dates of letters and activities in the R.H. representation. Investigator Rosen said that he now had no question in his mind that, if Attorney Erspamer could address the administrative suspensions relating to CLE and bar dues, he would be competent to practice law. Investigator Rosen concluded that a number of personal and financial difficulties had caused great distress to Attorney Erspamer around the time of the initial investigation, which was probably a factor in

17

Attorney Erspamer's unusual responses to Investigator Rosen's requests to communicate orally and not in writing.

¶ 46. Not only did Investigator Rosen in his supplemental report comment on what he understood to be the reasons for Attorney Erspamer's conduct, as requested in this court's order, but he also took the additional step of offering a re-evaluation of the three counts relating to the R.H. representation. He said that based on his discussions with Attorney Erspamer and his understanding of Attorney Erspamer's situation at the time of the R.H. representation, it was now his opinion that Attorney Erspamer had not violated either SCR 20:1.3 or SCR 20:1.4. He pointed to the fact that Attorney Erspamer had been in the process of closing his office and that the R.H. appeal had been inadvertently omitted from the list of pending cases provided by the SSA. Moreover, he stated that, considering all the circumstances surrounding Attorney Erspamer at the time of his initial investigation, he now concluded Attorney Erspamer's refusal to communicate orally with him was understandable and not a violation of the rules. Investigator Rosen concluded his evaluation by moving to dismiss the three counts related to the R.H. representation and subsequent investigation.

¶ 47. Given the fact that Investigator Rosen's supplemental report was in stark contrast to his prior testimony and the referee's findings of fact, plus his unusual request to dismiss a number of counts after the filing of a referee's report and recommendation, we directed the other special investigator, Deborah Smith, to respond to Investigator Rosen's supplemental report.

¶ 48. Investigator Smith's response differed from Investigator Rosen's supplemental report in multiple ways. Investigator Smith disputed that Attorney

18

Erspamer's financial difficulties and the closing of his law office had caused his failure to complete the D.N. representation or his failure to maintain communication with the client. Investigator Smith noted that when she had spoken with Attorney Erspamer during her investigation of the D.N. representation, Attorney Erspamer had never made any such claim to her.

¶ 49. Investigator Smith expressed her opinion that the counts relating to the D.N. representation remained valid and continued to warrant discipline. She further stated that she agreed with the referee's comments about the presence of mental health issues and thought that Attorney Erspamer's conduct of abruptly closing his law office, cutting himself off from his family and friends, and withdrawing into his house spoke for itself and demonstrated the need for a mental health evaluation. Her response also discussed some information she had gained from her conversations with Attorney Erspamer's family indicating that Attorney Erspamer had been experiencing mental health problems for some time. She acknowledged that this information had not previously been made a part of the record before the referee. She concluded that, whether or not due to the stress of his legal practice or personal life, Attorney Erspamer had dropped the ball on the D.N. representation because of difficulties in functioning as a practicing lawyer caused by his mental health problems.[8]

[8] The supplemental reports by Investigator Rosen and Investigator Smith have been filed and maintained under seal because they discuss specific information regarding Attorney Erspamer's mental health. We have included some general information from those supplemental reports in this opinion to the extent necessary to explain the context of our review and the reasons for our disposition of this disciplinary proceeding.

¶ 50.   Attorney Erspamer was expressly authorized by this court's orders to submit replies to the supplemental reports filed by Investigator Rosen and Investigator Smith. He did not object to those reports nor did he file any replies to them. Given the lack of any objection, we conclude we may rely on the contents of those reports in evaluating the discipline and conditions to be imposed.

¶ 51.   We now turn to our review of the referee's report and recommendation and our consideration of the response of Attorney Erspamer to the order to show cause and the supplemental reports of the special investigators. When reviewing a referee's report, we affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 52.   The referee's findings of fact were made on the basis of the allegations in the complaint due to Attorney Erspamer's default. There has been no appeal from those findings. In addition, while Investigator Rosen's supplemental report provides some additional explanation for some of those facts, it does not undermine those factual findings. We therefore adopt the referee's findings of fact as made.

¶ 53.   We further determine that those findings of fact support the legal conclusion that Attorney Erspamer engaged in each of the five counts of profes-

sional misconduct alleged in the complaint. The facts clearly demonstrate that Attorney Erspamer stopped working on both the D.N. and R.H. matters and failed to move them forward with diligence toward completion. He also failed to have any communication with those clients for long periods of time, leaving them in the dark as to the status of their legal matters despite their repeated attempts to obtain information. Finally, the factual findings establish that Attorney Erspamer deliberately refused to communicate orally with the special investigator after the investigator had informed him that an oral conversation was imperative to allow the investigator to obtain a full understanding of the situation. This is a willful failure to cooperate with a grievance investigation, in violation of SCR 21.15(4). If Attorney Erspamer had spoken with Investigator Rosen initially when asked to do so, we may have been able to avoid the need for ordering supplemental reports and the corresponding delay in concluding this proceeding.

■

¶ 54. We next consider Investigator Rosen's supplemental report and motion to dismiss the three counts relating to the R.H. representation and ensuing investigation. Setting to the side the question of whether a special investigator may file a motion on his or her own behalf when represented by counsel and the question of whether a special investigator may move for dismissal of some counts after the referee has issued his/her report and recommendation, we conclude that the information set forth in Investigator Rosen's supplemental report substantively does not merit the dismissal of any counts. The information in the report does not change the facts as found by the referee. The report does not challenge the fact that Attorney Erspamer stopped doing work on the R.H. appeal and never notified his client of that fact.

Moreover, the fact that the R.H. appeal did not show up on a SSA list of pending cases does not mean that Attorney Erspamer did not display a lack of diligence. Whether or not the R.H. appeal was inadvertently omitted from the SSA's list, Attorney Erspamer should have known independently that he was handling R.H.'s appeal and needed to either complete the appeal or make arrangements to withdraw from the representation so that R.H. could find successor counsel. Moreover, the fact that Attorney Erspamer may have been experiencing some personal and financial difficulties does not excuse the fact that he failed to have any communication with his client for approximately one year about a pending matter. Such difficulties also do not excuse Attorney Erspamer's willful disobedience of a proper request from a person investigating a grievance against him. Consequently, we deny Investigator Rosen's motion to dismiss Counts 3 through 5 of the second amended complaint.[9]

¶ 55.   We now turn to the issues of the proper level of discipline and the possible imposition of conditions on the reinstatement of Attorney Erspamer's license. We recognize that the resolution of these issues is impacted by the existence of facts that suggest the presence of mental health problems. We are sensitive to discussing an attorney's personal health information unnecessarily, but we are also cognitive of the fact that one of the responsibilities we have in the area of lawyer

---

[9] Given that Attorney Erspamer did communicate orally with Investigator Rosen following our January 12, 2011, order, we do not impose an ongoing temporary suspension for willful failure to cooperate under SCR 22.03(4). We proceed to a final decision on review of the referee's findings of fact and conclusions of law, including the referee's conclusion that Attorney Erspamer violated SCR 21.15(4) by failing to communicate orally with Investigator Rosen when he was conducting his initial investigation of the R.H. grievance.

regulation and one of the objectives of imposing discipline is to protect the public. *See* Preamble to SCR ch. 21 ("The lawyer regulation system is established to carry out the supreme court's constitutional responsibility to supervise the practice of law and protect the public from misconduct by persons practicing law in Wisconsin."); *see. also In re Disciplinary Proceedings Against Woods*, 2008 WI 79, ¶ 22, 311 Wis. 2d 213, 751 N.W.2d 840 (one consideration in imposing discipline is the need to protect the public, the courts, and the legal system from a repetition of the misconduct). We are somewhat limited in this case by the fact that while there are questions about Attorney Erspamer's mental health in the record, there is only a limited amount of information on that subject and no hard medical evidence.

¶ 56.   Having considered the seriousness of the misconduct, the need to protect the public and the legal system from a reoccurrence, the need to impress upon Attorney Erspamer the seriousness of the misconduct, and the need to deter other attorneys from committing similar misconduct, we conclude, as did the referee, that a 60–day suspension of Attorney Erspamer's license to practice law is an appropriate level of discipline.

¶ 57.   We also determine that some conditions must be imposed on the reinstatement of Attorney Erspamer's license in order to ensure that Attorney Erspamer is prepared to handle the rigors of a law practice once again and that other clients will not experience what D.N. and R.H. did. Although there is no definitive proof that Attorney Erspamer's misconduct was a result of mental health or other problems, there are enough warning signs in this matter that we determine he must be required to undergo mental health and alcohol or other drug abuse (AODA) evaluations and to provide copies of

those evaluations to the OLR before his license can be reinstated. We further conclude that as a condition of reinstatement Attorney Erspamer must be required to execute medical record releases authorizing the OLR to review his medical records for a period of two years.[10] Once Attorney Erspamer has complied with these conditions and the other conditions generally required for reinstatement after a suspension of less than six months, his license can be reinstated.

¶ 58. We do not require at this juncture as a condition of reinstatement or continued practice of law that Attorney Erspamer prove he is following a psychiatrist's treatment plan. Although that might be a possible course of action, we note at this point it has not been *proven* that Attorney Erspamer was or is suffering from mental health issues. Our rules contain a procedure for assessing whether an attorney is incapable of practicing law due to some form of medical incapacity. That process has not begun here, much less concluded. We believe that process should be used for Attorney Erspamer's situation, just as it would be for any other attorney.

¶ 59. Requiring Attorney Erspamer to undergo evaluations and allowing the OLR to review his medical records will enable the OLR to determine whether

---

[10] Although this disciplinary proceeding was brought on behalf of the LRS by special investigators, we are directing the OLR to receive the specified documents and to determine whether to proceed with a possible medical incapacity investigation and proceeding because the rules relating to medical incapacity, unlike the rules for disciplinary proceedings, do not contain any reference to the appointment of a special investigator. *Compare* SCRs 22.34–22.36 (medical incapacity procedures) *with* SCR 22.25 (procedures for allegations of misconduct against a participant in the lawyer regulation system).

there is a reason to conduct a full medical incapacity investigation and to initiate a formal proceeding to suspend Attorney Erspamer's license due to medical incapacity. Moreover, the OLR need not wait until the completion of a medical incapacity proceeding to seek a medical incapacity suspension. If the OLR determines from its analysis of the evaluations and Attorney Erspamer's medical records that his practice of law would pose a risk to the interests of the public and the administration of justice, it may move the court for an immediate temporary suspension such as is authorized under SCR 22.21.

¶ 60. We do not impose these conditions lightly. We recognize that Attorney Erspamer has been a respected and productive attorney in this state for many years. Given the facts presented in this record, we conclude that the conditions and procedures described above conform most closely to our rules and provide adequate protection for the public while being fair to Attorney Erspamer.

¶ 61. Finally, we determine that Attorney Erspamer should be required to pay the full costs of this disciplinary proceeding. If he is currently experiencing financial difficulties that limit his ability to pay those costs, he can make arrangements with the OLR for a payment plan.

¶ 62. IT IS ORDERED that the license of Michael O. Erspamer to practice law in Wisconsin is suspended for a period of 60 days, effective as of the date of this order.

¶ 63. IT IS FURTHER ORDERED that, as a condition of the reinstatement of his license to practice law in Wisconsin, Michael O. Erspamer shall take the following actions: (1) undergo a mental health evaluation and an alcohol and other drug abuse (AODA)

evaluation, (2) provide copies of these evaluations to the Office of Lawyer Regulation, and (3) execute medical record releases authorizing the Office of Lawyer Regulation for a period of two years to review his medical and mental health records and to speak with medical or mental health providers.

¶ 64.   IT IS FURTHER ORDERED that within 60 days of the date of this order, Michael O. Erspamer shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Michael O. Erspamer to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 65.   IT IS FURTHER ORDERED that to the extent he has not already done so, Michael O. Erspamer shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 66.   PATIENCE DRAKE ROGGENSACK, J. (*concurring in part; dissenting in part*). I concur with the majority's conclusions that Attorney Erspamer violated the Rules of Professional Conduct, that his license should be suspended for 60 days, and that he should be required to pay full costs. I dissent, however, from the conditions imposed upon reinstatement, as there is no factual record in this proceeding that warrants such a heavy intrusion into Attorney Erspamer's confidential health care information and choices as is required by the waiver of confidentiality and the mental health evaluation.