# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1275-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Michael P. Erhard, Attorney at Law: |
| | Office of Lawyer Regulation, <br>   Complainant, <br>  v. <br>Michael P. Erhard, <br>   Respondent. |
| | DISCIPLINARY PROCEEDINGS AGAINST ERHARD |

| | |
|---|---|
| OPINION FILED: | September 12, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | |
|  COUNTY: | |
|  JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  DISSENTED: | |
|  NOT PARTICIPATING: | DALLET, J., did not participate. |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1275-D

STATE OF WISCONSIN           :         IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Michael P. Erhard, Attorney at Law:**

**Office of Lawyer Regulation,**

        Complainant,

    v.

**Michael P. Erhard,**

        Respondent.

**FILED**

**SEP 12, 2018**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report of Referee William Eich, in which he found, based on the admissions of Attorney Michael P. Erhard, that Attorney Erhard had committed 11 counts of professional misconduct, and in which he recommended that Attorney Erhard's license to practice law in this state be suspended for a period of six months. After carefully reviewing the matter, we accept Attorney Erhard's admission that he committed the first ten counts of misconduct alleged in the

complaint filed by the Office of Lawyer Regulation (OLR). We do not decide whether Attorney Erhard's conduct in obtaining a cashier's check made payable to a third party constitutes a violation of former Supreme Court Rule (SCR) 20:1.15(e)(4)a, as alleged in Count 11, because that determination would not change the level of discipline we impose. We conclude that a suspension of three months is the appropriate level of discipline to be imposed under the particular facts of this case. As the OLR advises that there are no client funds to restore, we do not impose any restitution award. We do require Attorney Erhard to pay the costs of this disciplinary proceeding, which were $3,190.26 as of April 17, 2018.

¶2 Attorney Erhard has been admitted to the practice of law in Wisconsin since August 1973. He has practiced in a number of private law firms since his admission. At the time of the events underlying this disciplinary proceeding, Attorney Erhard was a member of Erhard and Payette, LLC in Madison. That firm is no longer in existence.

¶3 Attorney Erhard has been the subject of professional discipline on one prior occasion. In 2002 he was privately reprimanded for professional misconduct that consisted of acquiring a proprietary interest in a client matter, making misrepresentations in a complaint filed in connection with the

2

client matter, and failing to notify the client when the civil action had been dismissed. Private Reprimand 2002-3.[1]

¶4 The OLR filed its complaint alleging 11 counts of misconduct in July 2017. Attorney Erhard's answer and affirmative defenses admitted most of the allegations of the complaint, but did object to a number of factual allegations and did provide some additional explanatory information. Despite those objections, Attorney Erhard's answer admitted all 11 counts of misconduct.

¶5 All of the allegations of misconduct in this matter arise out of Attorney Erhard's handling of his firm's client trust account. The Erhard and Payette firm maintained both a client trust account and an operating account for the business of the firm. Initially, those accounts were maintained at Chase Bank. On May 16, 2014, Attorney Erhard opened a new client trust account at Johnson Bank. For a few months, both trust accounts were in existence.[2] On August 14, 2014, the law firm closed the Chase Trust Account.

¶6 It appears that Attorney Erhard was the person at the firm primarily in charge of the client trust account. He signed

---

[1] Copies of private reprimands are ordinarily available on the court's website. This reprimand is not available on the court's website, but a copy could be obtained by contacting the OLR.

[2] For the sake of brevity and clarity, this opinion will refer to the two client trust accounts as the Chase Trust Account and the Johnson Trust Account.

checks drawn on the account and made the electronic transfers to and from the account that are the subject of this proceeding. The firm employed a paralegal, who was responsible for providing an accounting firm with the necessary information so that the accountants could prepare checks for Attorney Erhard's signature. The accounting firm also maintained the trust account records for the firm.

¶7 Most of the allegations in the OLR's complaint relate to Attorney Erhard's handling of trust account funds connected to two client matters involving civil actions—one on behalf of E.A. and one on behalf of J.O. We will divide the allegations between the periods prior to and after the switch of the client trust accounts from Chase Bank to Johnson Bank.

¶8 With respect to the E.A. matter during the time period in which the Chase Trust Account was being used, between May 2, 2014, and May 29, 2014, Attorney Erhard made seven disbursements in the total amount of $200,000 from the Chase Trust Account to E.A., M.A., S.A., and the law firm's operating account. The four disbursements to the operating account were made by electronic transfers. These seven disbursements exceeded the amount in the Chase Trust Account for the E.A. matter by $100,000, which resulted in funds from other clients covering these disbursements.

¶9 On May 30, 2014, a deposit of $537,000 for E.A. was wired into the Chase Trust Account. This repaid the $100,000 that had been taken from other client accounts and left a positive balance of $437,000 for E.A. On that same date

4

Attorney Erhard made two additional electronic transfers totaling $125,000 from the Chase Trust Account to the firm's operating account. In June 2014, Attorney Erhard issued three checks to E.A., M.A., and S.A. in the total amount of $267,315 and made two electronic transfers in the total amount of $2,673.38 from the Chase Trust Account to the firm's operating account. Thus, at the end of these transactions, there was a balance of $42,011.62 in funds belonging to E.A. in the Chase Trust Account.

¶10 With respect to the J.O. matter specifically, there were three particular transactions that formed the basis for allegations of misconduct. First, on June 25, 2014, Attorney Erhard purchased two cashier's checks out of the Chase Trust Account with funds belonging to J.O. The two cashier's checks, totaling $68,256.75, were made payable to the Wisconsin Department of Revenue (DOR). Attorney Erhard caused those two cashier's checks to be sent to the DOR in payment of the income tax liability for J.O. and his wife. On July 1, 2014, Attorney Erhard electronically transferred $178,125 from the Chase Trust Account to the law firm's operating account as payment for legal fees. On that same date he also electronically transferred $211,590.15 to J.O.'s checking account.

¶11 The OLR's complaint also contains allegations regarding the transfer of funds from the Chase Trust Account to the Johnson Trust Account. On July 2, 2014, the firm's operating account had a balance of $167,135.33. On that date Attorney Erhard signed a hand-written check for $400,000 drawn

5

on the operating account and payable to the Johnson Trust Account. The check was deposited with Johnson Bank on that same date. On July 3, 2014, Attorney Erhard electronically transferred $400,000 from the Chase Trust Account to the firm's operating account to cover the check he had deposited the day before. Nearly all of that $400,000 belonged to nine clients. After this transfer there remained a balance of $17,986.86 in the Chase Trust Account.

¶12 On August 1, 2014, Attorney Erhard electronically transferred $17,000 from the Chase Trust Account to the operating account. These funds were used to cover a number of checks and electronic withdrawals from the operating account that were used to pay business expenses and to pay a $5,000 draw to Attorney Erhard. On that same date, however, Attorney Erhard deposited $17,000 from another source to the Johnson Trust Account to replenish the trust account funds.

¶13 On August 14, 2014, Attorney Erhard transferred the remaining $986.86 in the Chase Trust Account into the firm's operating account. As with the earlier movement of the $17,000, on that same date Attorney Erhard deposited a check from the operating account into the Johnson Trust Account. With the transactions on both August 1 and August 14, 2014, Attorney Erhard effectively moved client funds from one trust account to the other, but for some reason he routed them through the firm's operating account.

¶14 The OLR's complaint also contains some allegations regarding the disbursement of funds for E.A. after the firm's

switch to the Johnson Trust Account. After Attorney Erhard moved the firm's client trust funds to the Johnson Trust Account, the balance of trust account funds for E.A. was $42,011.62. From September 15, 2014, to December 12, 2014, Attorney Erhard made four disbursements totaling $124,573.62 related to the E.A. matter. One of the four disbursements was a $10,000 check from the Johnson Trust Account to the firm's operating account in payment of legal fees. The first of these four disbursements created a negative balance of nearly $27,000 for the E.A. matter in the Johnson Trust Account. After the last of the four disbursements, the negative balance had grown to $82,562. This meant that funds from other clients were used to cover the four disbursements. Approximately six months after the last of these four disbursements, Attorney Erhard deposited $82,562 into the Johnson Trust Account to replenish the funds belonging to the other clients and eliminate the negative balance for E.A.

¶15 The OLR's complaint charged Attorney Erhard with committing 11 separate counts of professional misconduct arising out of the facts described above. The complaint, however, alleged multiple counts for the same conduct. For example, Counts 1, 2, and 3 all alleged that over a roughly three-week period in May 2014 Attorney Erhard had improperly disbursed from the Chase Trust Account $100,000 more in connection with E.A.'s matter than was in the trust account for that client. Count 1

7

alleged that this conduct had violated former SCR 20:1.15(f)(1)b.[3] Count 2 alleged that this same conduct had violated SCR 20:1.15(b)(1).[4] Count 3 alleged that this same conduct had violated SCR 20:8.4(c).[5]

¶16 Counts 4, 5, and 6 repeated this pattern with respect to Attorney Erhard's excessive disbursements in connection with

---

[3] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(f)(1)b provided:

A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

[4] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[5] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

the E.A. matter over the period of September to December 2014. Count 4 alleged that this conduct had violated former SCR 20:1.15(f)(1)b. Count 5 alleged that this same conduct had violated SCR 20:1.15(b)(1). Count 6 alleged that this same conduct had violated SCR 20:8.4(c).

¶17 Count 7 related to Attorney Erhard's routing of the $400,000 in trust funds through the firm's operating account when moving the money from the Chase Trust Account to the Johnson Trust Account on July 3, 2014. The OLR alleged in Count 7 that the electronic transfer of the $400,000 in client funds to the firm's operating account had violated SCR 20:1.15(b)(1).

¶18 Counts 8 and 9 related to the routing of the $17,000 in client trust funds through the firm's operating account on August 1, 2014, and the use of those funds for other purposes. Specifically, Count 8 alleged that the initial transfer of the $17,000 in client trust funds from the Chase Trust Account to the operating account and the use of those funds to pay business expenses and a monthly draw to Attorney Erhard had violated SCR 20:1.15(b)(1). Count 9 alleged that this same conduct also had violated SCR 20:8.4(c).

¶19 Count 10 addressed all electronic transfers that Attorney Erhard had made out of the Chase Trust Account to the firm's operating account, as well as the July 1, 2014 electronic transfer from the Chase Trust Account to J.O.'s checking

account. This count alleged that the use of such electronic transfers had been in violation of former SCR 20:1.15(e)(4)c.[6]

¶20 Finally, Count 11 alleged that Attorney Erhard's purchase of two cashier's checks payable to the DOR using funds from the Chase Trust Account had violated former SCR 20:1.15(e)(4)a.[7] The OLR characterized this as two separate transactions. It alleged that Attorney Erhard first withdrew cash from the Chase Trust Account and then used that cash to purchase the two cashier's checks. It alleged that the withdrawal of cash had constituted the ethical violation.

¶21 Attorney Erhard's answer admitted all 11 counts of misconduct in the OLR's complaint. The answer even admitted the violation of former SCR 20:1.15(e)(4)a in Count 11, although the answer disputed that the purchase of the cashier's checks had constituted a withdrawal of cash from the trust account.

¶22 Given Attorney Erhard's admission of all 11 counts in the complaint, the only issue that was addressed at the evidentiary hearing in this proceeding was the appropriate level of discipline. In addition to testifying himself, Attorney Erhard called four witnesses, including a federal judge appearing in response to a subpoena, all of whom had extensive

---

[6] Former SCR 20:1.15(e)(4)c provided: "A lawyer shall not make deposits to or disbursements from a trust account by way of an Internet transaction."

[7] Former SCR 20:1.15(e)(4)a provided: "No disbursement of cash shall be made from a trust account and no check shall be made payable to 'Cash.'"

experience with Attorney Erhard as a practicing lawyer and spoke highly of his competence as a lawyer and his good character and integrity.

¶23 The referee ultimately recommended a six-month suspension and the imposition of two conditions on Attorney Erhard's return to the practice of law following the suspension: (1) that Attorney Erhard never hold responsibility for any trust property or trust account in the future and (2) that Attorney Erhard annually certifies to the OLR that he is not responsible for overseeing any trust property or trust account. The referee agreed with the OLR that several aggravating factors——the number of charges (11), the existence of a "pattern" of misconduct, and the amount of money involved——required a suspension. On the other hand, the referee concluded that several mitigating factors cited by Attorney Erhard——his lack of intent or malice, the restitution he made by depositing personal funds into the trust account, and his cooperation with the OLR throughout the investigation and disciplinary proceeding——required a suspension shorter than the nine-month suspension sought by the OLR.

¶24 Attorney Erhard filed a motion for reconsideration that focused on Count 11 regarding the purchase of the cashier's checks payable to the DOR. He urged the referee to reconsider the referee's conclusion that Attorney Erhard had admitted, without qualification, that his purchase of the two cashier's checks had been a cash withdrawal from the trust account in violation of former SCR 20:1.15(e)(4)a. He asserted that he had substantially complied with the spirit and purpose of that rule

11

and had not converted or misappropriated any client funds. He suggested that it would be more appropriate to find that the manner of the purchase and the nature of the checks had not complied with the formalities of a different rule, former SCR 20:1.15(f)(1)e(1). He further asked the referee to reduce the recommended suspension to one just shy of six months so that he would not have to go through the formal reinstatement process.

¶25 The referee denied the reconsideration motion. The referee refused to amend his report because he stated that Attorney Erhard had indeed admitted the violation of former SCR 20:1.15(e)(4)a in Count 11. The referee also refused to reduce the recommended suspension, stating that he had taken into account Attorney Erhard's lack of intentional or malicious conduct in recommending a suspension less than the nine-month suspension sought by the OLR.

¶26 When we review a referee's report and recommendation in an attorney disciplinary case, the standard of review we utilize is well-established. We affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

12

¶27 The first ten counts of alleged misconduct and the factual allegations supporting those counts do not present any concerns. Given Attorney Erhard's admission of the allegations, we adopt the referee's findings of fact and we conclude that those findings demonstrate that Attorney Erhard committed the misconduct alleged in Counts 1-10.

¶28 Count 11, however, is not so easily resolved. We have not previously decided whether purchasing a cashier's check made payable to a third party on behalf of a client using funds in an attorney's client trust account constitutes a withdrawal of cash in violation of former SCR 20:1.15(e)(4)a. We determine that we need not do so here because we conclude that a decision on whether or not there was a technical violation of former SCR 20:1.15(e)(4)a would not impact the level of discipline we would impose.

¶29 We now turn to the issue of the appropriate level of discipline that should be imposed for the ten counts of misconduct we have found. It is clear that Attorney Erhard failed to manage his firm's client trust account as he was ethically required to do. Moreover, this was not a single occurrence, but a repeated shortcoming. On the other hand, we conclude that the number of counts of misconduct alleged in the complaint overstates the instances of misconduct. The complaint used the same conduct to allege multiple counts. If it had not done so, there would have been five or six counts instead of 11. Moreover, there are no allegations here that any client ultimately suffered lasting harm. The referee found that the

13

level of discipline should be mitigated by Attorney Erhard's lack of intent or malice, and we agree. Attorney Erhard has a substantial history as a practicing lawyer in this state, and the testimony that he presented at the evidentiary hearing supports a conclusion that his failure to manage his trust account properly was an aberration, rather than an indication of his character. He has cooperated with the OLR's investigation, admitted his misconduct, returned all funds to the trust account, and expressed remorse for his failings.

¶30 Under these specific facts, we determine that a three-month suspension would accomplish the goals of discipline. We agree with the referee that a reprimand would unduly depreciate the seriousness of Attorney Erhard's failings, but we do not believe that it is necessary to require Attorney Erhard to go through the formal reinstatement process. While the level of appropriate discipline must be determined on the basis of the facts in each case, we have imposed similar levels of discipline in other cases involving a lawyer's failure to properly hold and manage client funds in the lawyer's trust account. See, e.g., In re Disciplinary Proceedings Against Kitto, 2018 WI 71, 382 Wis. 2d 368, 913 N.W.2d 874 (60-day suspension imposed for five counts of misconduct, including failing to hold client funds in trust and converting over $10,000 for the lawyer's personal use, where lawyer admitted misconduct and had made full restitution); In re Disciplinary Proceedings Against Clark, 2016 WI 36, 368 Wis. 2d 409, 878 N.W.2d 662 (four-month suspension imposed on experienced attorney for eight counts of misconduct, including

14

failing to hold client funds in trust, disbursing funds in excess of amounts held in trust for a particular client, making cash withdrawals from a trust account, and hiding income or assets from taxing authorities).

¶31 We do not impose the condition as recommended by the referee. It is almost impossible for a practicing lawyer to "never [have] responsibility for any fiduciary or trust property or account." A client delivering to a lawyer a check for an advanced fee imposes a fiduciary obligation on that lawyer, even if the lawyer's obligation is simply to hand over the check to another person in the law firm that supervises the firm's client trust account. We do require Attorney Erhard to attend six credits of continuing legal education on the subject of trust account management within the next 12 months, as approved by the OLR.

¶32 As is our usual custom, we also find it appropriate to assess the full costs of the proceeding against Attorney Erhard. This case presents no reason for departing from our standard practice of imposing costs on respondent attorneys on whom discipline is imposed.

¶33 IT IS ORDERED that the license of Michael P. Erhard to practice law in Wisconsin is suspended for a period of three months, effective October 12, 2018.

¶34 IT IS FURTHER ORDERED that Michael P. Erhard shall attend six credits of continuing legal education on the subject of trust account management within the next 12 months, to be approved by the Office of Lawyer Regulation.

15

¶35 IT IS FURTHER ORDERED that within 60 days of the date of this order, Michael P. Erhard shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $3,190.26 as of April 17, 2018.

¶36 IT IS FURTHER ORDERED that Michael P. Erhard shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶37 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

¶38 REBECCA FRANK DALLET, J., did not participate.