# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2022AP12-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Brian T. Stevens, Attorney at Law: |
| | Office of Lawyer Regulation, |
| |       Complainant, |
| |     v. |
| | Brian T. Stevens, |
| |       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST STEVENS

| | |
|---|---|
| OPINION FILED: | June 27, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|    COURT: | |
|    COUNTY: | |
|    JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| Per curiam. | |
| NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2022AP12-D

STATE OF WISCONSIN     :     IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Brian T. Stevens, Attorney at Law:**

**Office of Lawyer Regulation,**

       **Complainant,**

    **v.**

**Brian T. Stevens,**

       **Respondent.**

**FILED**

**JUN 27, 2023**

Samuel A. Christensen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review referee Sue E. Bischel's recommendation that this court suspend Attorney Brian T. Stevens' license to practice law in Wisconsin for a period of 60 days and impose conditions on his practice of law thereafter. The referee also recommended that Attorney Stevens be required to pay restitution to a third party and pay the full costs of this proceeding.

¶2 Because no appeal has been filed, we review the referee's report pursuant to SCR 22.17(2).[1] In conducting our review, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we will review the referee's conclusions of law on a de novo basis. See In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶ 5, 305 Wis.2d 71, 740 N.W.2d 125. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶ 44, 261 Wis.2d 45, 660 N.W.2d 686.

¶3 After our independent review of the record, we approve the referee's findings of fact and conclusions of law and adopt them. We agree that Attorney Stevens' misconduct merits a 60-day suspension. We also agree that certain conditions should be placed on Attorney Stevens' license to practice law following his suspension, though we define them more narrowly than did the referee. We further agree with the referee's recommendation that Attorney Stevens be ordered to pay restitution and the full costs of this proceeding.

¶4 Attorney Stevens was admitted to practice law in Wisconsin in 1995. His disciplinary history consists of a

---

[1] SCR 22.17(2) provides: "If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter."

private reprimand in March 2020 for his lack of diligence and lack of communication with a client, and for failing to timely respond to the subsequent investigation by the Office of Lawyer Regulation (OLR). Private Reprimand No. 2020-3.[2]

¶5   On January 4, 2022, the OLR filed a complaint against Attorney Stevens that alleged six counts of professional misconduct. The OLR's complaint sought a 60-day suspension of Attorney Stevens' license to practice law. Attorney Stevens filed an answer stating that he pled no contest to all the charges, but disputing that a 60-day suspension would be an appropriate sanction. Attorney Stevens requested an evidentiary hearing on sanctions.

¶6   Referee Bischel held an evidentiary hearing on October 22, 2022. On February 21, 2023, the referee filed a report containing her findings of fact and conclusions of law, as well as her recommendation for discipline. The referee's report and the exhibits received at the evidentiary hearing may be summarized as follows.

¶7   Attorney Stevens has operated a solo law practice in Green Bay since 2010. Before opening his practice, Attorney Stevens had no experience in running a business, maintaining a trust account, marketing, tracking hours, or invoicing. He is a

---

[2] Electronic copy available at https://compendium.wicourts.gov/app/33747756407a454038230868267c21116412201d.continue?action=detail&detailOffset=4.

self-admitted procrastinator who tends to put off necessary tasks, including the proper maintenance of his trust account.

¶8 This tendency caused problems during Attorney Stevens' representation of R.K. In 2013, R.K. retained Attorney Stevens to represent him regarding injuries he sustained in an accident. While that claim was pending, R.K. asked an acquaintance, W.B., to lend him money, promising he would repay her when he received a settlement in his personal injury matter. W.B. loaned R.K. $4,000 and R.K. agreed to repay her $4,500 if he received sufficient funds from his settlement.

¶9 Attorney Stevens drafted a promissory note memorializing the agreement between W.B. and R.K. It included the following language: "If settlement funds sufficient to may [sic] repayment are received, such payment shall be through trust fund disbursement by Attorney Brian Stevens." W.B. and R.K. signed the note in July 2014.

¶10 Attorney Stevens also loaned R.K. $700 for living expenses while the personal injury case was pending. The money was to be paid out of R.K.'s personal injury settlement funds.

¶11 Attorney Stevens settled R.K.'s personal injury claim with an insurance company for the amount of $85,000. On August 4, 2015, R.K. signed a release agreeing to that settlement. The insurance company sent Attorney Stevens a check for the amount of settlement funds remaining after the payment of subrogated medical expense claims: $40,687.

¶12 Attorney Stevens deposited that check in his trust account on September 15, 2016. At that time, Attorney Stevens

4

had $450 in his trust account. Attorney Stevens did not inform W.B. of his receipt of the settlement funds in which she had an interest pursuant to the promissory note that he had drafted.

¶13 On November 6, 2016, Attorney Stevens prepared a settlement statement and discussed it with R.K., who agreed with the amounts. On November 10, 2016, Attorney Stevens disbursed $28,550 to himself: $28,000 for his fee and $550 for the financial assistance he gave R.K. during his representation. The sum of $12,587 remained in the trust account; $450 belonged to Attorney Stevens and the remaining balance was from the R.K. settlement.

¶14 On December 23, 2016, Attorney Stevens made a $200 cash withdrawal from his trust account and deposited it in R.K.'s prison account. The sum of $12,387 remained in the trust account; $450 belonged to Attorney Stevens and the remaining balance was from the R.K. settlement.

¶15 On May 4, 2017, Attorney Stevens issued a trust account check to R.K. in the amount of $7,087. The sum of $5,300 remained in the trust account; $450 belonged to Attorney Stevens and the remaining balance was from the R.K. settlement.

¶16 On April 6, 2018 and May 16, 2018, Attorney Stevens made additional disbursements from his trust account totaling $4,500. Specifically, Attorney Stevens withdrew $3,800 to pay his own bills or expenses, and he paid $700 to another client as a refund of her retainer, even though he was not holding any funds in trust for that client. Because only $450 of Attorney

Stevens' trust account balance belonged to him, these two disbursements came mostly from R.K.'s funds.

¶17 On June 25, 2018, Attorney Stevens deposited $4,500 of his own money in the trust account. On March 21, 2019, Attorney Stevens made another deposit of his own funds ($2,464.35) into his trust account.

¶18 On July 12, 2019, Attorney Stevens disbursed $565 from his trust account to a client for whom he was not holding any funds in trust. On November 5, 2019, Attorney Stevens disbursed $1,645 to a different client for whom he was also not holding any funds in trust. Attorney Stevens used his own funds for both disbursements from his trust account.

¶19 On January 23, 2020, R.K. filed a grievance with the OLR against Attorney Stevens regarding his handling of the personal injury settlement funds.

¶20 On March 15, 2020, Attorney Stevens disbursed $4,500 to R.K. via a trust account check. At the evidentiary hearing, Attorney Stevens explained that he knew he was holding $4,500 for W.B. pursuant to the promissory note he had drafted, but after making minimal and unsuccessful efforts to find contact information for W.B., Attorney Stevens decided to send R.K. the money in the hope that doing so would "fix things." Ultimately, Attorney Stevens never disbursed any funds to W.B. as required under the promissory note, and W.B. has never received any of the funds due under the note.

¶21 During its investigation, the OLR asked Attorney Stevens to produce the internal records he maintained for his

6

trust account (e.g. a transaction register or individual client ledger). Attorney Stevens did not do so but instead requested copies of transaction records and cancelled checks from his bank in order to reconstruct how he handled his trust account funds.

¶22 During proceedings before the referee, Attorney Stevens did not contest, and the referee determined, that Attorney Stevens' behavior amounted to numerous forms of professional misconduct; specifically:

- Count 1:  Attorney Stevens violated SCR 20:1.8(e)[3] by providing R.K. financial assistance during the course of his representation.

- Count 2:  Attorney Stevens violated SCR 20:1.15(e)(1)[4] by failing to notify W.B. in writing of his receipt of the R.K. settlement funds and failing to promptly deliver to W.B. the $4,500 to which she was entitled.

---

[3] SCR 20:1.8(e) provides: "A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client."

[4] SCR 20:1.15 (e)(1) provides: "Upon receiving funds or other property in which a client has an interest, or in which a lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive."

- Count 3: Attorney Stevens violated SCR 20:1.15(b)(1)[5] by failing to hold W.B.'s and/or R.K.'s funds in trust.

- Count 4: Attorney Stevens violated SCR 20:8.4(c)[6] by converting W.B.'s and/or R.K.'s funds to his own use or for the benefit of third parties.

- Count 5: Attorney Stevens violated SCR 20:1.15(b)(3)[7] by commingling his own funds in his client trust account.

- Count 6: Attorney Stevens violated SCR 20:1.15(g)(1)[8] by failing to maintain and preserve complete records of trust account funds.

---

[5] SCR 20:1.15 (b)(1) provides: "A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts."

[6] SCR 20:8.4 (c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[7] SCR 20:1.15(b)(3) provides: "No funds belonging to a lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account. Each lawyer or law firm that receives trust funds shall maintain at least one draft account, other than the trust account, for funds received and disbursed other than in a trust capacity, which shall be entitled 'Business Account,' 'Office Account,' 'Operating Account,' or words of similar import."

¶23 In her report, the referee recommended that the court suspend Attorney Stevens' license for 60 days (the suspension length requested by the OLR), as opposed to the sanction that Attorney Stevens claimed was appropriate in post-hearing briefing (a public reprimand). In making this recommendation, the referee considered a number of aggravating factors, including Attorney Stevens' "persistent procrastination and failure to perform even the most basic administrative duties for many, many years," resulting in administrative "chaos" and "massive disorganization" in his office; his tendency to try to justify or blame others for decisions he makes that violate his professional duties; his seeming inability to understand the harm caused by his failure to attend to his professional duties; and his apparent belief that procrastination and poor administrative management are inevitable facets of his practice.

¶24 The referee considered several cases cited by the OLR in support of its request for a 60-day suspension. The referee found one case to be particularly instructive. In In re Disciplinary Proceedings Against Zenor, 2021 WI 77, 399 Wis. 2d 326, 964 N.W.2d 775, the court imposed a 60-day suspension on an

---

[8] SCR 20:1.15 (g)(1) provides: "A lawyer shall maintain and preserve complete records of trust account funds, all deposits and disbursements, and other trust property and shall preserve those records for at least six years after the date of termination of the representation. Electronic records shall be backed up by an appropriate storage device. The office of lawyer regulation shall publish guidelines for trust account record keeping."

attorney with no previous discipline who failed to timely pay settlement funds to two entities owed money by her client for services related to the dispute; the attorney allowed more than five years to elapse before paying the entities' claims. The attorney also converted funds in her trust account for her own use and failed to respond to the client's requests for information. Given the 60-day suspension imposed in Zenor, and given the need to "sufficiently motivate [Attorney] Stevens to make the difficult changes he needs to make to prevent further violations," the referee agreed with the OLR's recommendation that a 60-day suspension was appropriate.

¶25 The referee also recommended that this court impose a variety of conditions on Attorney Stevens' practice of law; namely, that he be required to "participate in individual counseling, fully cooperate with a mentor, participate in any and all available education pertaining to Supreme Court Rules, and provide complete and accurate trust account records to OLR on a quarterly basis." The referee explained that Attorney Stevens' "procrastination and anxiety over his inability to manage his business are at the root of his past behavior and will continue to impact his professional responsibilities if left unattended." "[A]bsent a great deal of intervention," the referee wrote, "there is a high likelihood [Attorney] Stevens will continue to violate the [rules of professional conduct]."

¶26 Finally, the referee recommended that the court impose the full costs of this disciplinary proceeding on Attorney Stevens, and order him to pay $4,500 in restitution to W.B., as

10

that amount "is more than 6 years overdue and should be paid promptly."

¶27 Attorney Stevens did not appeal from the referee's report and recommendation. Thus, we proceed with our review of the matter pursuant to SCR 22.17(2).

¶28 There is no showing that any of the referee's findings of fact——derived from the OLR's complaint, Attorney Stevens' answer, and the evidentiary hearing——are clearly erroneous, so we adopt them. We also agree with the referee's legal conclusions that Attorney Stevens violated the Supreme Court Rules noted above.

¶29 The only issue in dispute before the referee concerned the appropriate sanction for Attorney Stevens' misconduct. We agree with the referee that a 60-day suspension is in order. Attorney Stevens has already received a private reprimand for lack of diligence and lack of communication with a client. A 60-day suspension for similar unprofessional conduct is a reasonable next step in the progressive discipline process, and one that is readily supported by precedent. See Zenor, 399 Wis. 2d 326 (discussed above); In re Disciplinary Proceedings Against Sarbacker, 2017 WI 86, 377 Wis. 2d 484, 901 N.W.2d 373 (attorney with two previous private reprimands suspended for 60 days based on six counts of misconduct, including failing to hold garnishment funds belonging to clients in a trust account and misappropriating approximately $2,000 of those funds); In re Disciplinary Proceedings Against Bartz, 2015 WI 61, 362 Wis. 2d 752, 864 N.W.2d 881 (attorney with previous private reprimand

11

suspended for 60 days based on five counts of misconduct, including failing to disburse settlement funds and failing to cooperate with an OLR investigation).

¶30 Like the referee, we believe that Attorney Stevens needs training to help ensure that he will comply with his professional duties when he resumes his law practice. See SCR 21.16(1m)(d) (professional discipline may include the imposition of conditions on the attorney's continued practice of law). Worryingly, the referee found that Attorney Stevens "does not correlate his failure to handle the 'business' aspects of his practice with the requirement he understand and follow the Rules of Professional Responsibility." To aid Attorney Stevens' understanding that he is ethically obligated to manage entrusted funds properly, we require that, before resuming practice, Attorney Stevens must attend a minimum of seven hours of continuing legal education in trust account management and law practice management, to be approved and monitored by the OLR for compliance.

¶31 Given the referee's stated concerns about Attorney Stevens' persistent pattern of procrastination, we are also convinced that more is needed than a few hours of instruction to ensure that he manages entrusted funds correctly. Like the referee, we believe that Attorney Stevens would benefit from a level of supervision that has been absent in his solo practice. We therefore require that, before resuming practice, Attorney Stevens must identify an attorney approved by the OLR who will monitor his practice of law for a period of two years after he

resumes practice, unless he is either employed by a law firm or practicing with another attorney aware of his disciplinary history. Attorney Stevens must pay any reasonable costs associated with such monitoring. We also require Attorney Stevens to furnish quarterly reports to the OLR of activities in his trust account for a period of two years after resuming practice, including furnishing any and all trust, fiduciary, and/or business account records requested by the OLR.[9]

¶32 Finally, we turn to the subject of costs and restitution. It is this court's general practice to assess the full costs of a disciplinary proceeding against the attorney being disciplined. SCR 22.24(1m). Attorney Stevens has filed no objection to the costs requested by the OLR, which total $8,366.07 as of March 13, 2023. We therefore impose them. Attorney Stevens likewise has made no objection to the referee's recommendation that he pay $4,500 to W.B. consistent with the terms of the promissory note he drafted. We therefore order this restitution payment.

¶33 IT IS ORDERED that the license of Brian T. Stevens to practice law in Wisconsin is suspended for a period of 60 days, effective August 8, 2023.

¶34 IT IS FURTHER ORDERED that, before resuming practice, Brian T. Stevens shall attend a minimum of seven hours of

---

[9] Regarding the referee's recommendation that this court order Attorney Stevens to participate in individual counseling, we decline to do so, with the belief that the conditions imposed herein will be sufficient to help Attorney Stevens fulfill his professional duties.

continuing legal education concerning the subjects of trust account management and law practice management, to be approved by the Office of Lawyer Regulation.

¶35 IT IS FURTHER ORDERED that, before resuming practice, Brian T. Stevens must identify an attorney approved by the OLR who will monitor his practice of law for a period of two years after he resumes practice, unless he is either employed by a law firm or practicing with another attorney aware of his disciplinary history. Attorney Stevens shall be responsible for any reasonable costs associated with such monitoring.

¶36 IT IS FURTHER ORDERED that Brian T. Stevens shall furnish quarterly reports to the Office of Lawyer Regulation of activities in his trust account for a period of two years after resuming practice, including furnishing any and all trust, fiduciary, and/or business account records requested by the Office of Lawyer Regulation.

¶37 IT IS FURTHER ORDERED that within 60 days of the date of this order, Brian T. Stevens shall pay restitution of $4,500 to W.B.

¶38 IT IS FURTHER ORDERED that, within 60 days of the date of this order, Brian T. Stevens shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $8,366.07 as of March 13, 2023.

¶39 IT IS FURTHER ORDERED that payment of restitution is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶40 IT IS FURTHER ORDERED that Brian T. Stevens shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶41 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).